## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DOMINIQUE K. WILKERSON**                                    **CIVIL ACTION**

**VERSUS**                                                                      **No. 20-3031**

**PARISH OF JEFFERSON, ET AL.**                          **SECTION I**

### ORDER & REASONS

Plaintiff Dominique K. Wilkerson ("Wilkerson") claims her former employer, Jefferson Parish and the Rivarde Juvenile Detention Center ("Rivarde"), terminated her because of her race and sex.[1]  She sued the municipality that operates Rivarde, the Parish of Jefferson ("Jefferson Parish" or "the Parish"), as well as the Director and Assistant Director of the agency that manages Rivarde, Roy Juncker ("Juncker") and Christopher Trosclair ("Trosclair") (collectively, "the defendants").  She alleges, *inter alia*, race discrimination under 42 U.S.C. §§ 1981 & 1983, disparate treatment and retaliation under Title VII and the Louisiana Employment Discrimination Law ("LEDL"), and state-law claims for intentional infliction of emotional distress ("IIED") and defamation.

Before the Court is the defendants' motion[2] for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The defendants seek dismissal of Wilkerson's §§ 1981 and 1983 claims, Title VII and LEDL retaliation claims, her state-law claims for IIED and defamation, as well as her requests for a

---

[1] R. Doc. No. 33 (amended complaint).
[2] R. Doc. No. 34.

declaratory judgment and permanent injunction.  Wilkerson opposed the motion,[3] to which the defendants replied.[4]  The motion is granted in part and denied in part for the reasons below.

## I.[5]

Wilkerson was employed as a Juvenile Home Detention Supervisor for the Parish's Department of Juvenile Services ("DJS") from August 27, 2019 until February 19, 2020.[6]  When she started work in August, she was assigned to Rivarde and provided four weeks of on-the-job training under another Home Detention Supervisor, Viollet Troulliet ("Troulliet").[7]  After being assigned to the night shift in September, "Wilkerson almost immediately began to have issues related to [a] lack of personnel and training."[8]  She complained to supervisors about these issues,[9] blaming many of the problems on Troulliet's mismanagement of the detention officers' work schedules.[10]

---

[3] R. Doc. No. 38.

[4] R. Doc. No. 41.

[5] The following facts were taken exclusively from Wilkerson's amended complaint, R. Doc. No. 33, and the Court accepts them as true for purposes of deciding this Rule 12(b)(6) motion.

[6] R. Doc. No. 33, at 3 ¶ 10.

[7] *Id.* at 4 ¶ 20.

[8] *Id.* at 4 ¶ 22.

[9] For example, an October email to Assistant Director Trosclair complained (as recounted now by Wilkerson) that "the night shift supervisors were routinely left with only three or four staff members and no replacements were provided for the employees who called out, which could result in potential violations of the administrative code [that regulates Rivarde's operations], including staffing, training, and safety requirements." *Id.* at 5 ¶ 23.  The amended complaint does not enclose this passage in quotation marks; the Court assumes it paraphrases the email's contents.

[10] *Id.* at 5 ¶ 24.

She alleges that these complaints were "met with continued scrutiny and complaints from Trosclair."[11]   Things apparently continued downhill from there. After "Wilkerson persisted in her requests to management to address the issues she had brought to their attention, she began to be targeted, harassed, and scrutinized."[12]

Wilkerson claims she was eventually targeted and terminated based on her race, sex, or both.  On January 13, 2020, Trosclair visited Rivarde; he was acting "on an alleged tip he received from" a white male colleague of Wilkerson (a fellow Home Detention Supervisor), who in turn relayed a tip from a white male Detention Officer, who reported "that multiple people were sleeping on the night shift."[13]  Among those accused of sleeping were Wilkerson and fellow Supervisor Brishawna Silby ("Silby") (who, like Wilkerson, is an African American female).[14]

The tip panned out—upon arrival, Trosclair "found two Detention Officers asleep on duty."[15]  Trosclair also claimed that he saw Silby "sleeping on duty when he peered through holes in the window blinds" overlooking the office in which Silby and Wilkerson were sitting.[16]  Wilkerson provided a written statement "advising that

---

[11] *Id.* at 6 ¶ 25.  She also apparently concedes, however, that Trosclair eventually relented: he "advised Wilkerson that she would be working on Tuesdays beginning November 26, 2019, with Troulliet to learn how to develop the schedule so that Wilkerson could handle the scheduling in lieu of Troulliet following policy and procedure concerning scheduling."  *Id.* at 6 ¶ 27.  The Court's best interpretation of that sentence is that Wilkerson was given control over the schedule she was previously complaining about.

[12] *Id.* at 6 ¶ 28.

[13] *Id.* at 7 ¶ 31.

[14] *Id.*

[15] *Id.* at 7–8 ¶ 32.

[16] *Id.*

she did not see Silby sleeping;" she said the same during later hearings.[17]  Trosclair, in late January, "pressured Wilkerson to issue a statement confirming that Silby was asleep" that night, which Wilkerson refused to do "and was subsequently retaliated against."[18]

On February 11, 2020, "Wilkerson had a surprise performance evaluation that was conducted by Trosclair," who gave Wilkerson poor marks—a combined performance rating of "Below Expectations."[19]  Also on February 11, Wilkerson "received notice of a pre-disciplinary hearing due to the evaluation she received from Trosclair," to be held on February 13, during which "she would be allowed to provide evidence and her position."[20]

On February 12, "Wilkerson filed a grievance against Trosclair advising of retaliation for her refusal to claim that Silby was asleep on duty" during Trosclair's January 13 visit.[21]  During her pre-disciplinary hearing on February 13, Wilkerson claims that she "was not provided with the opportunity to address the false statements and allegations made against her during the February 13, 2020 [sic]."[22]  Attending the hearing were "HR Representative Gretchen Tilton, Director [of DJS]

---

[17] *Id.*
[18] *Id.* at 9 ¶ 37.
[19] *Id.* at 10 ¶ 41.  Trosclair gave her ratings of "below expectations" as to the subcategories of safety and supervision and management, and "needs improvement" as to communication and decision making.  *Id.*
[20] *Id.* at 11 ¶ 43.
[21] *Id.* at 11 ¶ 44.
[22] *Id.* at 11 ¶ 45.  This allegation is taken verbatim from Wilkerson's amended complaint.

Roy Juncker, Assistant Director [of DJS] Christopher Trosclair, and Home Manager Ralph Sacks,"[23] who was Wilkerson's "immediate supervisor."[24]

On February 17, "Wilkerson sent an email to Juncker and Sacks outlining the untrue statements that were made about her during her pre-disciplinary hearing."[25] The email also alleged that "Trosclair failed to follow policy regarding [Wilkerson's] evaluation, that she has never received a coach and counseling and that Trosclair is discriminatory toward women, including Wilkerson[,] and that she is treated differently than other male supervisors."[26] On February 18, Director Juncker "signed Wilkerson's evaluation" (apparently the one completed by Trosclair on February 11), which noted that there were "no changes made [in Wilkerson's performance over the previous seven days][27] and that employment would cease on February 19, 2020."[28] Wilkerson was terminated on February 19; "the reasons for termination were the same listed [sic] on her evaluation of February 11, 2020."[29]

On February 28, Wilkerson "filed an intake questionnaire to [sic] the Louisiana Commission on Human Rights [sic] Office of the Governor," but she received no response.[30]  She filed her charge of discrimination with the EEOC on June 12, 2020,

---

[23] *Id.*
[24] *Id.* at 10 ¶ 40.
[25] *Id.* at 11–12 ¶ 46.
[26] *Id.*
[27] *Id.* at 11 ¶ 42 (stating that, on February 18, "Juncker signed the [February 11] evaluation stating that no change had been made in the last seven days and employment would cease on February 19, 2020").
[28] *Id.* at 12 ¶ 47.
[29] *Id.* at 12 ¶ 48.
[30] *Id.* at 12 ¶ 49.

and received her right to sue letter on August 10, 2020.[31]  This lawsuit was filed on November 8, 2020.[32]

After the defendants filed their first motion to dismiss, Wilkerson was granted leave to amend her complaint.[33]  She filed the present six-count amended complaint, which added several claims and factual allegations.[34]  The defendants appear to challenge all claims raised therein except for her two Title VII and parallel LEDL race- and sex-based disparate treatment claims.[35]

## II.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If the well-pleaded factual allegations "do not permit the

---

[31] *Id.*

[32] *See* R. Doc. No. 1.  The defendants do not challenge whether this lawsuit was timely filed.  *See generally* R. Doc. No. 34-1.

[33] R. Doc. No. 26.

[34] *See infra* note 40 (discussing the differences between Wilkerson's first and second complaint).

[35] *See generally* R. Doc. No. 34-1.

court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).  However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).  Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 16, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (alteration in original)).

## III.

### A.    Count One: 42 U.S.C. §§ 1981 & 1983 – Negligent Hiring, Retention, and Training

The defendants first attack count one of the amended complaint: Wilkerson's "negligent hiring, retention, and training" claims, which she labels as a "[v]iolation of

42 U.S.C. § 1981 and 1983."[36] These claims are asserted against Juncker and Trosclair (but only in their official capacities) and Jefferson Parish.[37]   Count one raises a number of claims that the defendants argue should be dismissed for a number of reasons.   The Court addresses each argument in turn.

*Wilkerson's § 1981 Claims May be Asserted Under § 1983*

First, the defendants insist that § 1981 "does not provide an independent cause of action against local governmental entities such as Jefferson Parish,"[38] so her § 1981 claims must be dismissed as to all defendants.   They are right and wrong.

True, a plaintiff may not "maintain an independent cause of action under § 1981" against local government entities or government actors sued in their official capacities.   *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 464 (5th Cir. 2001) (citing *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 703 (1989)).   But that does not mean § 1981 is of no use to Wilkerson; a damages claim arising under that section can—indeed, if brought against government actors, it "*must*"—"be asserted by means of the § 1983 procedural remedy."   *Escamilla v. Elliott*, 816 F. App'x 919, 925 (5th Cir. 2020) (reversing the district court's dismissal of a § 1981 claim, which was dismissed solely because the plaintiff failed to expressly invoke § 1983 as the procedural vehicle for the § 1981 claim); *see also Johnson v. City of Shelby, Miss.*, 574

---

[36] R. Doc. No. 33, at 14 (heading under "Count 1").
[37] R. Doc. No. 33, at 3 ¶¶ 12–13; *id.* at 15 ¶ 59.
[38] R. Doc. No. 41, at 3.

U.S. 10, 12 (2014) (summarily reversing Fifth Circuit precedent that required plaintiffs to expressly invoke § 1983 to state a claim).[39]

Wilkerson appears to do just that: she alleges that the defendants violated "the rights afforded Wilkerson" by § 1981, and she expressly invokes § 1983[40]—even though doing so is not required. *Id.*; *Escamilla*, 816 F. App'x at 925. She may bring the § 1981 claim so long as § 1983 avails her of a cause of action to do so—which it does. *Id.* Accordingly, her § 1981 claims, asserted through § 1983, will not be dismissed.

*Official-Capacity Claims Against Juncker & Trosclair*

The defendants have a point, however, as to the implication of Wilkerson's suing the individual defendants in their official capacities. She asserts her § 1983 claims against all defendants, but she sues Juncker and Trosclair only in their official

---

[39] Given *Escamilla* and *Johnson*, the three Eastern District of Louisiana cases cited by the defendants that dismissed § 1981 claims, *see* R. Doc. 41, at 3 n.8—all of which preceded *Escamilla*—do not bind this Court.

[40] R. Doc. No. 33, at 14 ¶ 55. The Court notes that, in her original complaint, Wilkerson did not rely on either §§ 1981 or 1983; the four-count complaint alleged only Title VII disparate-treatment and retaliation claims and parallel claims under Louisiana law. *See* R. Doc. No. 1. The defendants then filed their first motion to dismiss. R. Doc. No. 12. In her opposition thereto, Wilkerson attached a six-count amended complaint, which added claims under § 1981, as well as claims for IIED and defamation. R. Doc. No. 21-1, at 8–12. The Court then held a status conference, during which the defendants stated they did not oppose granting Wilkerson leave to amend her complaint; the Court granted leave, dismissed the original motion to dismiss as moot, and set a briefing schedule for the present motion to dismiss. R. Doc. No. 29. The next day, Wilkerson's amended complaint added a reference to § 1983 under the § 1981 claim. R. Doc. No. 33, at 14.

capacities as to these claims.[41]   The defendants argue that the claims against Juncker and Trosclair must be dismissed, reasoning that a "state official sued in his official capacity is not considered a 'person' who can be sued for purposes of liability under Section 1983."[42]  Notwithstanding that argument, Wilkerson's official-capacity claims still duplicate her claims against Jefferson Parish—so they will be dismissed on that basis.

"This Court has previously dismissed official-capacity claims against officers of an entity which were redundant of other claims in a lawsuit."  *Derischebourg v. Clark*, No. 15-1712, 2016 WL 98617, at *8 (E.D. La. Jan. 8, 2016) (Africk, J.) (citing cases and dismissing duplicative official-capacity claim).  Accordingly, there is no need for Wilkerson to maintain any official-capacity claims against Juncker and Trosclair that she also seeks against Jefferson Parish.  Those official-capacity claims will be dismissed, which leaves only the claims against Jefferson Parish.

*Section 1981: Intentional Race Discrimination*

As for her § 1981 intentional race discrimination claim, which she brings under § 1983 against Jefferson Parish: the "analysis of employment discrimination claims under Title VII and § 1981 is 'identical,' because 'the only substantive differences' between the two statutes are 'their respective statutes of limitations and the requirement under Title VII that the employee exhaust administrative

---

[41] *Id.* at 3 ¶ 12 ("Suit is brought against Juncker in his individual capacity for state tort claims only and in his official capacity for 1981 and 1983 claims"); *id.* at 3 ¶ 13 (stating the same for Trosclair).

[42] R. Doc. No. 34-1, at 9 n.35 (citing *Houston v. Zeller*, 91 F. App'x 956, 957 (5th Cir. 2004)).

remedies.'" *Chen v. Oschner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015). Because the analysis is the same, the Court will analyze it under the Title VII framework.  *See Woods v. Cantrell*, No. 20-482, 2021 WL 981612, at *13 (E.D. La. Mar. 16, 2021) (Africk, J.) (same).   But the defendants do not now[43] challenge Wilkerson's Title VII disparate treatment claims, so the Court will not address her comparable § 1981 claims here.   Accordingly, her § 1981 claims for wrongful termination due to intentional race discrimination will not be dismissed.

　　*Municipal Liability: Failure to Train*

　　As for her § 1983 "negligent hiring, retention, and training"[44] claims against Jefferson Parish:[45] "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Rather, to establish municipal liability, the plaintiff must show "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right."  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009)).   "A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery."  *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).  Mere "conclusory allegations" will not do.  *Id.*;

---

[43] They challenged these claims in the motion to dismiss the original complaint, *see* R. Doc. No. 12-1, at 7, but they do not do so here, *see* R. Doc. No. 34-1, at 11 (challenging only the retaliation-based Title VII claim).
[44] R. Doc. No. 33, at 14 ¶¶ 54–60.
[45] As noted above, the comparable official-capacity claims against Juncker and Trosclair are dismissed as duplicative of the claim against Jefferson Parish.

*Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (explaining that a "pattern requires similarity and specificity" with the facts of the challenged violation to be "tantamount to official policy").

The defendants argue that Wilkerson has failed to sufficiently allege facts supporting municipal liability for either a failure-to-train, negligent hiring, or negligent retention claim.[46]  In her opposition memorandum, under the heading "negligent hiring, retention, and training," Wilkerson defended the failure-to-train claim exclusively.[47]  Accordingly, to the extent Wilkerson intends to plead "negligent hiring" and "negligent retention" as claims distinct from her failure-to-train and § 1981 wrongful-termination claims—which seems unlikely[48]—she has abandoned those claims.  The Court will address only her failure-to-train claim.

To state a "cognizable failure-to-train claim, a plaintiff has to plead facts plausibly demonstrating that (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in

---

[46] R. Doc. No. 34-1, at 9–11.

[47] R. Doc. No. 38, at 7–8.

[48] As discussed above, Wilkerson analyzed, in a separate section of her brief, a "wrongful[] terminat[ion]" claim under §§ 1981 and 1983, which the Court treats as identical to her Title VII disparate treatment claims.  *Id.* at 7.  At any rate, "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." *Daniels v. Williams*, 474 U.S. 327, 330 (1986).  Wilkerson has not cited, and the Court has not found, any case allowing a plaintiff to premise a § 1983 claim on negligent retention or hiring. *Cf. Mitchell v. Wilson*, 51 F.3d 1045 (5th Cir. 1995) ("Mitchell's complaint [that a police chief was negligent in hiring an allegedly racist officer] sounds in negligence, which is not actionable under section 1983.").

question." *Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)). Crucially, "[i]n order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Id.* (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)). And the "plaintiff must plausibly allege that the municipality was *deliberately* indifferent to the need for proper training." *Id.* at 965–66 (emphasis added).

There are numerous deficiencies with Wilkerson's failure-to-train claim. First, she fails to "allege with specificity how [the] particular training program [was] defective." *Id.* at 965. Wilkerson does not provide any specific facts as to the training program's defectiveness—instead only vaguely alleging that the Parish failed to "meet the standards required for Juvenile Detention Facilities" under Louisiana law.[49] That is not the level of "specificity" that *Anokwuru* demands.

Second, she fails to allege a constitutional violation that was "directly caused" by the deficient training. The only conceivable constitutional violation alleged in the amended complaint is that she was terminated because of her race or gender. But she does not specifically allege any official policy—relating to training or otherwise—that could be the "moving force" behind this violation. *Bustos*, 599 F.3d at 467. The most she claims is that "Trosclair is discriminatory toward women, including

---

[49] R. Doc. No. 33, at 15 ¶ 59.

Wilkerson[,] that she is treated differently than other male supervisors,"[50] and that the Parish failed to adequately respond to her "complaints related to lack of training, staffing, safety, harassment, and discrimination."[51]  She also claims, in her opposition memorandum, that there was a "custom at DJS to require that members of protected classes . . . follow policies but other similarly situated employees who were not in the protected class were not required to follow policy."[52]

That says absolutely nothing about any official policy related to training.  It is insufficient to meet the "heightened pleading requirement [that] applies to allegations of municipal custom or policy."  *Fraire*, 957 F.2d at 1278.  And Wilkerson's "bald assertion" in her opposition—that those in "protected classes" were required to follow policy while others "not in the protected class" were not—need not and will not be accepted by the Court.  *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 906–07 (E.D. La. 2001) (Duval, J.) (refusing to accept conclusory assertion that a constitutional violation was "in accordance with the official policy" of the parish; and refusing to accept allegation that an officer's violations were "in compliance with" municipality customs as conclusory); *Spiller v. City of Texas City, Police Dep't*, 130

---

[50] *Id.* at 12 ¶ 46.

[51] *Id.* at 15 ¶ 59.  The Court stresses that it is making numerous generous inferences from the amended complaint; as to the failure-to-train claim, the amended complaint's ultimate conclusion has nothing to do with race or gender discrimination: "The failure to adequately train Wilkerson resulted in her inability to perform her job and eventual termination."  *Id.* at 15 ¶ 60.  At bottom, Wilkerson's failure-to-train claim says only that *she* was insufficiently trained, which caused her termination. Nowhere does Wilkerson explain how this amounts to a constitutional violation, but the Court has attempted to construe the amended complaint in the light most favorable to her.

[52] R. Doc. No. 38, at 8.

14

F.3d 162, 167 (5th Cir. 1997) (rejecting as "conclusory" an allegation that the defendant "was acting in compliance with the municipality's customs, practices or procedures").

Third, Wilkerson fails to adequately allege that the Parish was *deliberately* indifferent to the supposedly deficient training. Plaintiffs ordinarily must satisfy the deliberate indifference prong by alleging a "pattern of similar violations"—only in "certain limited cases" may a plaintiff rely on the "narrow exception" that allows for a single incident to show deliberateness. *Anokwuru*, 990 F.3d at 966. But Wilkerson does not allege a pattern of instances in which similarly situated employees were treated as unfavorably as she was—at most, she alleges two (interrelated) instances: the treatment of her and Silby. Without a pattern of similar violations, she does not adequately allege that the Parish was deliberately indifferent to the deficient training of which she complains. Therefore, the Court will dismiss her failure-to-train claim against Jefferson Parish.

*Summary of Count One*

After all that, a summary may be helpful: Wilkerson's § 1981 claims may be asserted through § 1983, and because they were not challenged on the merits they will not now be dismissed; the official-capacity claims against Juncker and Trosclair are dismissed as being duplicative of the claims against Jefferson Parish; and Wilkerson's failure-to-train claim is dismissed.

**B.     Count Four: Title VII & LEDL Retaliation**

The defendants next challenge Wilkerson's Title VII and LEDL retaliation claims, arguing that she has failed to adequately allege that she engaged in protected activity, and that the remaining elements of her claims are formulaic and conclusory.[53]

A plaintiff alleging Title VII retaliation need not produce evidence of a *prima facie* case to survive a Rule 12(b)(6) motion to dismiss. *Stone v. La. Dept. of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014). But she must still "plead sufficient facts on all of the ultimate elements . . . to make her case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). "[I]t can be helpful to reference the *McDonnell Douglas* framework" to answer that question. *Id.* And when the plaintiff has only circumstantial evidence of discrimination or retaliation, *McDonnell Douglas* governs the ultimate analysis. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (explaining that a plaintiff "may either present direct evidence that [he] was discriminated against . . . or alternatively proceed under" *McDonnell Douglas*), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662.

To plead a *prima facie* retaliation claim, a plaintiff must allege that "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the first two elements." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 n.3 (5th Cir. 2007) (citing *Sherrod v. Am. Airlines, Inc.*, 132

---

[53] R. Doc. No. 34-1, at 11–14.

F.3d 1112, 1122 n.8 (5th Cir. 1998)).  The element primarily at issue here, as indicated above, is whether Wilkerson engaged in protected activity.

Protected activity can consist of either (1) opposition—"opposing any practice made an unlawful employment practice by Title VII," or (2) participation—"making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII." *Saketkoo v. Tulane Univ. Sch. of Med.*, __ F. Supp. 3d __, No. 19-12578, 2020 WL 7861308, at *11 (E.D. La. Dec. 31, 2020) (Africk, J.) (quoting *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) and 42 U.S.C. § 2000e–3(a)) (cleaned up).  Wilkerson contends she was retaliated against for engaging in opposition—"complaining to her supervisors of discriminatory conduct in the workplace."[54]

For a plaintiff's action to count as "opposition," the opposed conduct need not, in fact, violate Title VII; rather, the employee must only have "reasonably believed the employment practice to be unlawful" under Title VII.  *Id.* (quoting *Rite Way Serv.*, 819 F.3d at 240).  And "the Fifth Circuit has indicated that, in some circumstances, '[a]n informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition' clause."  *Id.* at *12 (quoting *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914–15 (5th Cir. 2008) (per curiam)).

However, even an informal act of opposition must still give notice to the employer that "the plaintiff views the employment practice as discriminatory."  *Id.*; *see also Allen v. Envirogreen Landscape Professionals, Inc.*, 721 F. App'x 322, 326 (5th

---

[54] R. Doc. No. 38, at 4.

Cir. 2017) ("In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices.").   Merely "complaining about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity." *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (per curiam) (analyzing an ADEA retaliation claim, where the Fifth Circuit "uses the same standards of proof . . . as it does for Title VII"); *see also Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (upholding grant of summary judgment on retaliation claim where, "[i]n her appellate brief, Appellant [did] not allege that she specifically complained of racial or sexual harassment, only harassment").   All told, informal "[c]omplaints about a 'hostile work environment' or 'unfair treatment' must give the employer some notice of how the conduct is discriminatory." *Saketkoo*, 2020 WL 7861308, at *12.

Wilkerson contends that she was retaliated against for performing a variety of actions, but most of the actions she cites would not have put the Parish on notice that she viewed its employment practices as discriminatory and therefore do not qualify as protected activity.[55]  The defendants focus exclusively on these allegations, arguing

---

[55] These non-protected activities include that Wilkerson: (1) "advised of issues related to staffing, training and safety that are required per the Louisiana Administrative Code;" (2) "was required to participate in the investigation into the allegations stemming from Trosclair's January 13, 2020 visit to Rivarde;" (3) "was required to provide DJS with information and statements related to allegations that her co-supervisor Silby was asleep;" (4) "was required to . . . participate in the investigation into claims against herself and Detention Officer D. Bailey;" (5) "filed a grievance

that Wilkerson has failed to allege she engaged in protected activity.[56]   However, Wilkerson also alleges that she "engaged in protected activity[] by opposing the disparate treatment and discrimination as described in the preceding paragraphs."[57] One of those paragraphs states that, on February 17, 2020—after her performance evaluation and pre-disciplinary hearing, but before her termination—Wilkerson "sent an email to Juncker and Sacks . . . [stating] that Trosclair is discriminatory toward women, including Wilkerson[,] and that she is treated differently than other male supervisors."[58]  The defendants do not address this allegation.

Wilkerson's email, though informal, was sent to Director Juncker and Home Manager Sacks—Wilkerson's "immediate supervisor."[59]    It was therefore communicated to a "decisionmaker" as required of a complaint supporting a retaliation claim.  *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (explaining that a retaliation claim "requires some showing that the decisionmaker— the individual 'who actually made the decision or caused the decision to be made'— was aware of the activity" (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000))).  And it would have put the Parish on notice that Wilkerson viewed an employment practice as discriminatory; it therefore may plausibly qualify

---

against Trosclair alleging retaliation [against Wilkerson for her not cooperating with the Silby investigation] and was terminated a week later."  R. Doc. No. 33, at 17–18 ¶ 75.

[56] R. Doc. No. 34-1, at 12.

[57] R. Doc. No. 33, at 17 ¶ 75.

[58] *Id.* at 11–12 ¶ 46.

[59] *Id.* at 10 ¶ 40.

as protected activity.   Whether that was the activity that caused Wilkerson's termination is a question not presently in front of the Court.

Accordingly, the Court will deny the defendants' motion as to Wilkerson's Title VII retaliation claim.

### C.    Count Six: IIED & Defamation

The defendants next argue that Wilkerson failed to state claims for intentional infliction of emotional distress ("IIED") and defamation.  The Court agrees.

*Defamation*

Defamation is comprised of four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997).  But "Louisiana appellate courts have held that 'an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, [is] a communication of the corporation,' not a publication to a third party."  *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 6623994, at *2 (E.D. La. Dec. 28, 2017) (Vance, J.) (quoting *Wisner v. Harvey*, 694 So. 2d 348, 350 (La. Ct. App. 1st Cir. 1996)); *Doe v. Grant*, 839 So. 2d 408, 416 (La. Ct. App. 4th Cir. 2003); *Bell v. Rogers*, 698 So. 2d 749, 756 (La. Ct. App. 2d Cir. 1997)).  In other words, if the defamatory statement is communicated only to whom it is "within the course and scope of their employment" to learn of the statement, the publication element is not satisfied. *Ioppolo v. Rumana*, 581 F. App'x 321, 329 (5th Cir. 2014).

Nowhere does Wilkerson's amended complaint allege that defamatory statements were published to third parties *not* employed by the Jefferson Parish Department of Juvenile Services.  She acknowledges that "the [defamatory] claims have been made to multiple individuals *employed by DJS*."[60]  Such intra-corporate statements are insufficient to constitute publication.

Perhaps in an attempt to plead around this hurdle, she alleges in conclusory fashion that "it was not within [these employees'] duties to have such knowledge."[61]  But the only allegedly "false" or "untrue" statements mentioned in Wilkerson's amended complaint were uttered during her February 13, 2020 pre-disciplinary hearing.[62]  Attending that hearing were "HR Representative Gretchen Tilton, Director Roy Juncker, Assistant Director Christopher Trosclair, and Home Manager Ralph Sacks."[63]  The amended complaint is completely unclear—and Wilkerson's opposition memorandum does not clarify—how it was outside any of these four attendees' "duties" to have such knowledge: Tilton, as HR representative, has a keen interest in the performance and discipline of any employee; the same goes for Director Juncker, who is tasked with managing the entire department; Trosclair was the manager who completed the specific performance evaluation discussed at the hearing; and Sacks was Wilkerson's "immediate supervisor."[64]

---

[60] R. Doc. No. 33, at 19 ¶ 75 (emphasis added).
[61] *Id.*
[62] *Id.* at 11 ¶ 45.
[63] *Id.* at 11–12 ¶ 46.
[64] *Id.* at 10 ¶ 40.

In short, Wilkerson has failed to plead any set of facts upon which it is plausible to conclude that false and defamatory statements were published to those outside of DJS—or, alternatively, to those within DJS who had no business learning of the statements' content. Accordingly, her defamation claim will be dismissed.

*IIED*

The defendants next argue that Wilkerson failed to state a claim against Juncker and Trosclair for IIED. To prevail on an IIED claim, a plaintiff must allege and ultimately prove "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Prest v. La. Citizens Prop. Ins. Corp.*, 125 So. 3d 1079, 1089 (La. 2012) (quoting *White v. Monsanto Co.,* 585 So. 2d 1205, 1209 (La. 1991)) (internal quotation marks omitted). Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000). Wilkerson's claim fails on the first element.

The "extreme and outrageous conduct" element is an extraordinarily high bar to clear: it must be "so extreme and outrageous in degree as to be regarded as atrocious and utterly intolerable in a civilized community." *Henson v. Bassett Furniture Indus., Inc.*, No. 99-3462, 2000 WL 1477496, at *5 (E.D. La. Oct. 4, 2000) (Schwartz, J.) (quoting *Barfoot v. Zapata Corp.*, No. 94-3052, 1995 WL 425026, at *4

22

(E.D. La. July 17, 1995) (Vance, J.), *aff'd*, 83 F.3d 419 (5th Cir. 1996)).  "Thus, there is no liability for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'  'Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  Not every verbal encounter may be converted into a tort[.]'"  *Almerico v. Dale*, 927 So. 2d 586, 592 (La. Ct. App. 5th Cir. 2006) (quoting *White*, 585 So. 2d at 1209).

The defendants argue that Wilkerson has made only conclusory allegations to support her IIED claim.  They are right.  Her amended complaint states that "Trosclair and Juncker intentionally caused Wilkerson great emotion [sic] distress related to the discrimination, retaliation, and eventual termination."[65]  That is far too conclusory to suffice, and her opposition memorandum points to no factual allegations that might be enough.  The Court's independent review of the amended complaint yields no more—it describes passing encounters with Trosclair and a negative performance evaluation, but those are insufficient: "disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."  *White*, 585 So. 2d at 1210.

In her opposition memorandum, Wilkerson apparently attempts to bolster her IIED claim by bootstrapping her defamation and Title VII claims to it, claiming that

---

[65] R. Doc. No. 38, at 8.

these allegations reach "the level of extreme and outrageous conduct."[66]  Not so—even assuming Wilkerson has stated defamation, discrimination, and retaliation claims, "[c]onduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous."  *Nicholas*, 765 So. 2d at 1025; *Stewart v. Parish of Jefferson*, 668 So. 2d 1292 (La. Ct. App. 5th Cir. 1996) (finding no IIED where supervisor harassed the plaintiff for two years about his personal life, increased his workload, and pressured the employee to quit).  Wilkerson has failed to state a claim for IIED.

### D.     Prayers for Relief: Declaratory Judgment & Injunction

Finally, the defendants argue that "Wilkerson fails to state claims for declaratory judgment and permanent injunction."[67]  Under her prayer for relief, Wilkerson asks that the Court "[d]eclare, pursuant to 28 U.S.C. § 2202 that the Defendants unconstitutionally violated Wilkerson's constitutional rights," and to "[g]rant Wilkerson a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request, from continuing to violate Title VII and state anti-discrimination laws."[68]

As to the declaration, the defendants argue "dismissal . . . is appropriate [because] the judgment sought is duplicative of the substantive legal claims in the lawsuit,"[69] a ground that other sections of this Court have deemed sufficient to justify

---

[66] *Id.*
[67] R. Doc. No. 34-1, at 20.
[68] R. Doc. No. 33, at 20 ¶ 80(i)–(ii).
[69] R. Doc. No. 34-1, at 20.

dismissing declaratory claims under Rule 12(b)(6).  *See Perry v. H.J. Heinz Co. Brands, LLC*, No. 19-280, 2019 WL 2423231, at *3 (E.D. La. June 10, 2019) (Feldman, J.); *Smitty's Supply, Inc. v. Hegna*, No. 16-13396, 2019 WL 1099712, at *2 (E.D. La. Mar. 8, 2019) (Lemmon, J.); *Siboney Contracting Co. v. Berkley Ins. Co.*, No. 17-9681, 2018 WL 1123624, at *3 (E.D. La. Feb. 28, 2018) (Lemelle, J.).  As to the injunction, the defendants argue (only on the merits of whether Wilkerson has pleaded the requisite elements) that Wilkerson "fails to provide any factual allegations that would establish a real and immediate threat for [sic] similar injury."[70]  Even if she had, the defendants argue, Wilkerson already has "an adequate remedy at law for her Title VII and LEDL claims," which obviates the need for equitable relief.[71]

Wilkerson's two-sentence response (as to both of these arguments) is that she "includes a request for a permanent injunction against Defendants pursuant to Title VII and state law.  Wilkerson requests that [sic] any and all relief she is entitled to under the applicable statutes pled therein."[72]

The Court agrees that the request for a declaratory judgment—to the extent Wilkerson asserts it as a separate "claim"—duplicates the relief sought in Wilkerson's substantive claims.  That is, to decide her Title VII and constitutional claims, the fact finder necessarily will have to declare whether the defendants violated her Title VII and constitutional rights.  Therefore, to the extent Wilkerson seeks a declaration as a separate claim, it is dismissed.

---

[70] *Id.* at 22.
[71] *Id.*
[72] R. Doc. No. 38, at 9.

As to the injunction: the Court questions whether Wilkerson has Article III standing to seek prospective injunctive relief—and standing is a jurisdictional prerequisite to this Court's reaching the defendants' merits-based arguments against the injunction. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562–63 (5th Cir. 1998) (stating that Article III imposes certain "constitutional 'preconditions for asserting an injunctive claim in a federal forum'" (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))); *see also Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014) (noting that "a plaintiff must demonstrate standing separately for each form of relief sought" (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000))).

However, whether Wilkerson has standing to seek an injunction is an issue that has not been briefed, so the Court is not prepared to rule on this issue at this time. Just as important, whether Wilkerson is entitled to an injunction (or any other remedy) need not be decided now, as the question of liability is yet to be decided. The Court will deny the defendants' motion as to this issue without prejudice.

## IV.

Accordingly,

**IT IS ORDERED** that the defendants' motion for partial dismissal is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** insofar as the following claims are **DISMISSED**:

(1) any official-capacity claims against Juncker and Trosclair that Wilkerson also brings against Jefferson Parish, since those claims duplicate each other;

26

(2) the failure-to-train claim against Jefferson Parish, as well as any "negligent retention" or "negligent hiring" claims;

(3) the defamation claim;

(4) the IIED claim; and

(5) the claim for declaratory relief, to the extent it is asserted as a separate claim, since it is duplicative of her substantive claims.

The defendants' motion is **DENIED** insofar as the following claims are **NOT DISMISSED**:

(1) the § 1981 claims for wrongful termination due to intentional race- or sex-based discrimination, which are brought under § 1983 and mirror Wilkerson's Title VII disparate treatment claims that are not presently challenged[73] by the defendants;

(2) the Title VII retaliation claim;

(3) the claim for injunctive relief.

New Orleans, Louisiana, June 14, 2021.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[73] *See supra* note 43 and accompanying text.

27